IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SCOTT HANSEL, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:25-cv-730 |
| | § | |
| HEIGHTS HEALTHCARE OF TEXAS, | § | |
| LLC *d/b/a* WHITE ROCK MEDICAL | § | |
| CENTER; NCP MANAGEMENT, LLC; | § | |
| MIRZA BAIG; TERRY FOKAS; | § | |
| NATIONAL PAYROLL SERVICES, LLC; | § | |
| WHITE ROCK MEDICAL CENTER, | § | |
| LLC; and RASHID SYED | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## ORIGINAL COMPLAINT

Plaintiff Scott Hansel ("Plaintiff" or "Hansel") brings this Original Complaint for violations of the WARN Act, ERISA, COBRA, the Americans with Disabilities Act of 1990 ("ADA") and Family Medical Leave Act. 29 U.S.C. § 2612(a)(1)(D), in addition to breach of fiduciary duty claims.

## INTRODUCTION

1.      Mr. Hansel was a full-time former MRI Technician at White Rock Medical Center hospital facility (which constituted several entities as set forth below) and herein after "Employer Defendants."  He was diagnosed with multiple myeloma in late September 2023.  In late September, Mr. Hansel was hospitalized for one week and recovered at home the following week.  When he returned to work, his physician continued his weekly chemotherapy treatments on Thursdays.  His condition required chemotherapy treatments, which required him to be on intermitted FMLA for the period of September 17, 2023 through April 30, 2024, while employed by Employer Defendants.

2.      Hansel's employer received the FMLA documentation from his physician making it

aware of his condition, his restrictions, and the required period of FMLA leave. Further, Hansel had specifically let his immediate supervisor, Rose Wilson; his Human Resource Director, Calvin Hodges; and Vice President of Operations, Melanie Flinn-Oviedo know of his medical condition and need for FMLA leave, which was ultimately approved.

3.      Yet on April 30, 2024, Mr. Hansel was wrongfully terminated from his employment while it was known by Employer Defendants that Mr. Hansel was on FMLA leave, had end-stage multiple myeloma and was undergoing treatment including chemotherapy.

4.      On April 30, 2024, Mr. Hansel, along with approximately 158 other hard-working employees at the hospital facility (over one-third of the workforce at that hospital facility), were summarily laid off without any advance notice, merely a written letter on this date. To add insult to injury, Hansel later learned that the Defendants had been taking money out of employee paychecks for health insurance premiums, short term and long-term disability, but not actually remitting those premium payments to the insurance providers' accounts.

5.      As a result, the health insurance coverage, short-term and long-term disability coverage for all the hospital facility's employees, including Hansel was retroactively canceled effective March 1, 2024. This meant that Hansel was denied necessary life-saving cancer treatments, despite having paid for insurance (and the Defendants stealing his payments and not paying the insurance bills). Many employees were also charged out of pocket for the medical services they received during March and April, despite the fact that they were dutifully paying their premiums during that time. And to make matters even worse, those employees who were laid off have been denied their right to ongoing COBRA benefits.

6.      As a result of the Defendants' reprehensible actions, 158 healthcare heroes were fired without a safety net, many current and former employees of the hospital were left with substantial unexpected medical debt or as with Mr. Hansel the inability to afford medical care at the most critical

moment of his life.  All of these adverse impacts were foreseeable, and easily preventable, by Defendants.  Defendants chose an unethical and illegal path. The Plaintiff now seeks to hold Defendants accountable for that choice.

<strong><u>PARTIES, JURISDICTION, AND VENUE</u></strong>

7.      Plaintiff Scott Hansel is an individual residing in Dallas, Texas who was formerly employed at White Rock Medical Center hospital facility in Dallas, Texas.  H e  was a beneficiary of the Blue Cross Blue Shield of Texas health insurance policy and welfare retirement plans at issue in this case.

8.      Defendant Heights Healthcare of Texas, LLC (*d/b/a* White Rock Medical Center) ("White Rock Medical Center" or "WRMC" herein) is a domestic limited liability company that owns and operates the White Rock Medical Center hospital facility in Dallas, Texas, which employed Plaintiff.  It may be served through its registered agent for process service in Texas: LegalInc Corporate Services, 10601 Clarence Dr., Suite 250, Frisco, TX 75033.

9.      Defendant NCP Management, LLC is a domestic limited liability company. It is a sponsor of the health and welfare plans at issue in this case. It is named as Plaintiff's employer in the "Benefits Guide" distributed to employees at White Rock Medical Center. It may be served through its registered agent for process service in Texas: LegalInc Corporate Services, 10601 Clarence Dr., Suite 250, Frisco, TX 75033.

10.     Defendant National Payroll Services, LLC is a domestic limited liability company. It is named as Plaintiff's employer on W2 forms filed with the Internal Revenue Service.  It is also a Plan Administrator of the health and welfare (Medical Plan a/k/a Group Health Plan) plans at issue in this case. It can be served via its registered agent for service of process in Texas: Paracorp Incorporated, 14001 W Hwy Suite 102, Liberty Hill, TX 78642.

11.     Defendant Mirza Baig is the CEO of White Rock Medical Center.  He is also one of

two members/managers of Heights HealthCare of Texas, LLC (the only other member/manager is his relative, Yusuf Baig), the sole member/manager of Defendant NCP Management, LLC, the sole member/manager of Defendant National Payroll Services, LLC, the sole member/manager of White Rock Medical Center, LLC, and a fiduciary of the health and welfare benefit plans at issue in this case. He may be served at 10857 Kuykendahl Road, Ste 120, The Woodlands, TX 77382; 19500 TX-249, Suite 560, Houston, TX 77070; or 811 Marshal Falls Dr., Spring, TX 77379, or wherever else he may be found.

12. Defendant Terry Fokas is the Chief Restructuring Officer of White Rock Medical Center and a fiduciary of the health and welfare benefit plans at issue in this case. He sent the letter terminating Plaintiff's employment. He may be served at 5906 Flintshire Ln, Dallas, TX 75252-5133, or wherever else he may be found.

13. Defendant White Rock Medical Center, LLC (*f/k/a* Pipeline East Dallas LLC) ("WRMC, LLC" herein) is part of an integrated enterprise together with WRMC. Mirza Baig is its sole Member/Manager. It also uses *d/b/a* names of "Heights Hospital" and "Peak Heights Surgicare." According to Dallas County deed records, WRMC owns all of the membership interests in WRMC, LLC, which in turn owns the hospital located at 9440 Poppy Drive, Dallas TX. WRMC, LLC and can be served via its registered agent, LEGALINC CORPORATE SERVICES INC., at 10601 CLARENCE DR., SUITE 250 FRISCO, TX 75033.

14. Defendant Rashid Syed is the Chief Operating Officer of White Rock Medical Center and a fiduciary of the health and welfare benefit plans at issue in this case. He may be served at NCP Admin , 6340 N. Eldridge Parkway, Suite N201, Houston, TX 77041, or wherever else he may be found.

15. Jurisdiction is proper on the ground of the existence of a federal question under 28 U.S.C. § 1331 based on Plaintiff's claims under the WARN ACT, 29 U.S.C. § 2101, et seq.; the

Employee Retirement Income Security Act, 29 U.S. C. § 1001 et seq. ("ERISA"); the Americans with Disabilities Act of 1990 ("ADA"); and the Family Medical Leave Act, 29 U.S.C. § 2612(a)(1)(D).

16.     Venue is proper in the Northern District of Texas, Dallas Division pursuant to 29 U.S.C. § 2104(a)(5) because the WARN Act violation occurred in Dallas, Texas, and under 29 U.S.C. § 1132(e) (2) because each of the ERISA Defendants can be found in Dallas County.  Further, the violations of COBRA, ADA and FMLA occurred in Dallas, Texas.

## CONDITIONS PRECEDENT

17.     All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Original Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## BACKGROUND FACTS

18.     On April 30, 2024, the White Rock Medical Center hospital facility suddenly, without any advance notice or warning, laid off Plaintiff Scott Hansel, along with approximately  157 other employees.

19.     The mass layoff caused more than 33 percent of White Rock Medical Center's employees to lose their jobs.

20.     White Rock Medical Center knew that the WARN Act applied to their mass layoff of employees, and that the WARN Act required it to provide 60 days' notice to employees prior to  a mass layoff like this one.

21.     On April 30, 2024, White Rock Medical Center issued a layoff letter to Plaintiff Scott Hansel and approximately 157 others. It titled the electronic document: "WARN Notice to Non-union

Employees."

22.    In the letter, White Rock Medical Center claimed that it was unable to provide the 60-day notice required by the WARN Act due to "unforeseeable circumstances" related to ongoing litigation between White Rock Medical Center and the hospital's former ownership group.

23.    The circumstances that resulted in the layoff were not, however, unforeseeable.

24.    White Rock Medical Center had every reason to know, well before April 30, 2024, that it was facing financial and operational difficulties.

25.    By the beginning of January 2024, White Rock Medical Center had every reason to know that it was facing serious financial and operational threats likely to result in a layoff.

26.    Specifically, a legal dispute between White Rock Medical Center and the hospital's former ownership group ("SRC") erupted sometime in late 2023.

27.    SRC is the former owner of the Hospital.  It sold the Hospital to WRMC in September 2023.  WRMC paid $9M for the Hospital.  It paid $3.600,000 upfront.  WRMC was then supposed to pay $2.4M on October 31, 2023; and then $250,000 per quarter after that. Under their agreement, SRC had a lien over WRMC's assets, and could forcelose on those assets if WRMC failed to pay.  SRC also agreed to provide ongoing operations services for the  Hospital's revenue software, health records, and other IT functions, in exchange for payments from WRMC.

28.    WRMC did not make the payments as promised.

29.    On January 25, 2024, White Rock Medical Center attempted and failed to mediate its dispute with SRC.

30.    On February 2, 2024, SRC filed an arbitration demand against White Rock Medical Center, making it clear that SRC was seeking cessation of its services, and a foreclosure on WRMC's assets, as a remedy for WRMC's failure to pay.  SRC scheduled a public auction of the assets for February 7, 2024.

31.     On February 5, 2024, White Rock Medical Center then filed its own lawsuit against the former hospital ownership group.

32.     The court filings submitted by WRMC's own experienced legal counsel on WRMC's behalf show that WRMC knew, as early as February 5, 2024, that it was facing an uphill battle to keep the hospital afloat, and that SRC intended to cease providing services by the end of March, and that SRC planned to foreclose on, and to publicly sell, certain major assets that were necessary to the hospital's function within 90 days.

33.     By February 5, 2024, it was therefore entirely foreseeable that it would be necessary for WRMC to implement substantial cost-cutting measures such as a mass layoff.

34.     White Rock Medical Center, at the time, was represented by a seasoned labor and employment attorney quite familiar with the WARN Act and its requirements, due to 30 years of experience serving as "a trusted, strategic adviser to companies throughout the country in a full range of labor and employment matters." It is highly likely, therefore, that WRMC would have been advised by this time of the requirements of the WARN Act.

35.     WRMC also had a mechanic's lien filed against it in January of 2024 because it could not pay a vendor who had done work on the building. That same month, they were sued by a Physicians Group for over a million dollars in damages, because of WRMC's failure to pay those doctors. In February 2024, WRMC's landlord had to file a lien against WRMC for over $800,000 in back rent charges, and locked them out of their offices, for repeated failures to make rent.

36.     On March 1, 2024, WRMC was sued by its landlord for that same (longstanding) failure to pay rent on the hospital building. That same month, they were sued by HHS Facilities Management, for its failure to pay over half a million dollars owed for services rendered.

37.     During this same time frame, WRMC also knew that it was several months behind on paying its employer share of health insurance payments for its employees.

38.    In short, it was abundantly clear by and even before March 1, 2024 that WRMC owed money all over town, could not pay even its most basic bills, and was bordering on financial and operational ruin.

39.    Yet, White Rock Medical Center refused to give its employees any notice of the potential for a layoff.

40.    Instead, it chose to string the employees along, getting every last working hour out of them while diverting money out of employee paychecks for the hospital's own expenses.

41.    In the "WARN Act" letter it sent out to its employees that day, WRMC referred to the layoff with the subject line: "Planned Reduction in Force."

42.    From March 1, 2024 through April 29, 2024, White Rock Medical Center continued to charge Hansel and all of its employees their employee share of health insurance premiums, and to deduct those charges from the employees' paychecks.

43.    White Rock Medical Center did not, however, remit those insurance premiums to its insurance carrier Blue Cross Blue Shield of Texas.  White Rock Medical Center also failed to remit its employer share of insurance premiums for its employees to Blue Cross Blue Shield of Texas for the months of March 2024 and April 2024.

44.    White Rock Medical Center's health and welfare benefit plans required it to remit both the employer and employee share of health insurance premiums for its eligible employees to Blue Cross Blue Shield of Texas for March 2024 and April 2024.

45.    Because White Rock Medical Center failed to remit the required premiums, Blue Cross Blue Shield retroactively canceled the health insurance coverage of all of White Rock Medical Center's 460 employees effective March 1, 2024.

46.    White Rock Medical Center never notified Hansel at any time during March 2024 or April 2024 that White Rock Medical Center was no longer remitting insurance premiums to Blue

Cross and Blue Shield of Texas.

47.    Hansel only found out when he went to receive his necessary chemotherapy treatments to treat his terminal cancer, and he was turned away for treatment because White Rock Medical Center had not paid the insurance premiums.

48.    As a result of these despicable, grossly negligent or intentional  acts, Hansel's health declined severely, and he was on the verge of death because White Rock Medical Center wrongfully fired him, didn't pay the insurance premiums he had paid, and he was left with no income and no health insurance.

49.    White Rock Medical Center never notified Hansel at any time during March 2024 or April 2024 or even in the April 30, 2024 layoff letters about any discontinuation or retroactive cancellation of their insurance.

50.    Hansel had a number of expensive health procedures during the months of March 2024 and April 2024 that were necessary to keep him alive.

51.    Hansel believed he was fully insured throughout March 2024 and April 2024.

52.    Hansel eventually learned from Blue Cross and Blue Shield of Texas that their insurance coverage had been retroactively discontinued as of March 1, 2024 due to White Rock Medical Center's failure to pay premiums.

53.    By the time Hansel received that information from Blue Cross Blue Shield, he had already received healthcare treatment thinking he had health insurance coverage for the visits, tests, and procedures when he in fact did not.

54.    Hansel started to receive Explanation of Benefit notices from Blue Cross and Blue Shield of Texas stating he owed thousands of dollars for medical procedures in March and April 2024 due to White Rock Medical Center's failure to pay premiums.

55.     Hansel has put White Rock Medical Center on notice of this illegal conduct, and nothing has been done to date.

56.     Throughout March 2024 and April 2024, Hansel was entitled to health insurance coverage from White Rock Medical Center under the terms of White Rock Medical Center's health and welfare benefit plan.

57.     Upon his layoff, under COBRA, Hansel, and the other laid off employees should have been entitled to elect and pay for continued health insurance coverage under the same group policy that covered them during their employment.

58.     Instead, because of White Rock Medical Center's failure to pay the premiums for March and April 2024, Hansel and the other laid off employees were being denied their right to COBRA continued health insurance coverage.

59.     Hansel had already met his deductible under White Rock Medical Center's health and welfare plan and requires additional medical treatment that will be extremely expensive without continued health insurance coverage under COBRA.

60.     White Rock Medical Center knew the dire financial and medical situation it created for its current and former employees yet did not remedy the situation by paying the back premiums due to Blue Cross Blue Shield of Texas, or quickly paying people for their losses.

61.     In an attempt to placate its current employees, White Rock Medical Center stated in an internal HR communication, as recently as June 17, 2024, that Blue Cross Blue Shield had provided them with "copies of all provider claims," and that "we paid the claims directly. No employee was denied any service during those months, nor were any claims not paid and processed."

62.     That statement, however, was undisputedly false.  Hansel is having to make monthly payments to pay off the insanely high medical debt—that should have been covered by insurance, but

for White Rock Medical Center taking the withholdings he made for insurance premiums and purposefully failing to remit them to Blue Cross Blue Shield.

63.    Hansel's claims, as well as other employees' claims, have not been paid, and, in fact, WRMC has sent out other communications claiming Blue Cross Blue Shield did not provide adequate information for WRMC to pay the claims, and admitting that medical claim reimbursements still have not actually been made.

64.    In addition to not receiving prior notice of their layoff, some employees like Hansel did not timely receive COBRA notices within 44 days of the April 30, 2024 layoff.

65.    Further, the COBRA Notices that were sent did not contain any information about what healthcare coverage, if any, employees would receive if they paid their COBRA premiums. When Plaintiff Hansel received his COBRA notice, all he knew was that Blue Cross Blue Shield had denied coverage of all of his medical claims from March and April of 2024 on the basis that "health insurance premiums had not been received."

66.    Despite knowing that the 158 laid off employees would have deadlines to elect COBRA coverage and would have to pay expensive premiums to receive such coverage, White Rock Medical Center did nothing to inform the laid off employees whether paying COBRA premiums would actually get the employees anything at all - or, if instead, their COBRA premiums, like the March and April premiums taken out of their paychecks, would disappear into a black hole leaving them without coverage and bearing the sole financial responsibility for their medical bills .

67.    Overall, White Rock Medical Center engaged in a consistent pattern and practice of hiding and misrepresenting important facts about its benefit plans and plan assets from its former and current employees.

68.    Defendants knew that Hansel was on protected FLMA leave.  They knew he had

terminal cancer.  Yet, they fired him, in violation of the FMLA and the ADA, and without following any of the laws related to notice.  Hansel was entitled to benefits that he paid for including health insurance, COBRA, short and long term disability insurance, but he was denied all of these benefits because of the egregiously illegal and wrongful acts of Defendants.

## CAUSES OF ACTION

### COUNT ONE – Violation of the WARN Act

*(Against Defendants Heights Healthcare of Texas, LLC, WRMC LLC,*
*NCP Management, LLC, and National Payroll Services, LLC)*

69.    Hansel realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

70.    Defendant Heights Healthcare of Texas, LLC is an employer as defined by the WARN Act.

71.    Defendants Heights Healthcare; National Payroll Services, LLC; NCP Management, LLC; WRMC LLC; and White Rock Medical Center, LLC are jointly and severally liable under the WARN Act because they are legally a "single employer."

72.    Defendants Heights Healthcare of Texas, LLC, National Payroll Services, LLC, NCP Management, LLC, WRMC LLC, and White Rock Medical Center, LLC (collectively, the "WRMC Defendants") have common ownership, are all managed by Mirza Baig (who has de facto control over the entities and their employment decisions), they all have the same health and welfare benefit plan rules and policies and other personnel policies, and interdependent operations.  And, they are interchangeably identified as the Hansel's employers in various tax and benefits documents.

73.    On April 30, 2024, the WRMC Defendants engaged in a "mass layoff" as defined by the WARN Act by laying off more than 50 employees and more than 33 percent of its workforce at a single site of employment.

74.     Under the WARN Act, the WRMC Defendants were required to give employees 60 days' notice of the mass layoff, along with 60 days of wages and 60 days of employee benefits during the 60 day notice period.

75.     The WRMC Defendants failed to give the employees impacted by the mass layoff 60 days' notice of the mass layoff, along with 60 days of wages and 60 days of employee benefits during the 60 day notice period.

76.     No exceptions to the advance notice requirements apply to the circumstances that led the WRMC Defendants to engage in the mass layoff.

77.     The circumstances that led to the layoff were not only reasonably foreseeable to the WRMC Defendants but actually fully known to the WRMC Defendants well before the date that notice under the WARN Act would have been required.

78.     The WRMC Defendants are therefore liable to Plaintiff, for 60 days of back pay and 60 days of benefits, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.

79.     Hansel additionally seeks the recovery of reasonable attorney's fees as part of his costs for enforcing his rights under the WARN Act.

## COUNT TWO – Denial of ERISA Medical Plan Benefits
### (ERISA 29 U.S.C. § 1132(a)(1)(b))

### *(Against Defendants National Payroll Services, LLC, Heights Healthcare of Texas, LLC, WRMC LLC, and NCP Management, LLC)*

80.     Hansel realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

81.     The WRMC Defendants and the National Payroll Services, LLC (Medical Plan) denied Plaintiff benefits he was entitled to under Section 1132(a)(1)(b) of ERISA and the health and welfare benefit plans that covered him while he was an employee of the WRMC Defendants.

82.     The WRMC Defendants had a health and welfare benefits plan, by which it provided health insurance coverage to eligible employees at White Rock Medical Center including Plaintiff.

83.     The WRMC Defendants contend this health and welfare benefits plan was called the National Payroll Services, LLC Medical Plan.

84.     Defendant NCP Management, LLC was the policyholder of the health insurance policy that covered the employees of Heights Healthcare of Texas, LLC.

85.     On information and belief, Heights Healthcare of Texas, LLC, NCP Management, LLC, and National Payroll Services, LLC were all plan sponsors of the health and welfare benefit plan  that provided  the Plaintiff an employee of White Rock Medical Center his entitlement to health insurance coverage.

86.     The WRMC Defendants are accordingly liable under Section 1132(a)(l)(b) of ERISA for all medical plan and health insurance coverage due, but not provided, to Plaintiff for the months of March and April 2024 and pursuant to COBRA, as well as Plaintiff's attorney's fees, expenses and costs of court.

### COUNT THREE – Breach of Fiduciary Duty - Medical Plan
### (ERISA 29 U.S.C. §§ 1104, 1105, 1109, 1132(a)(1), & 1132(a)(3))

*(Against Defendants Heights Healthcare of Texas, LLC, WRMC, LLC*
*NCP Management, LLC, National Payroll Services, LLC, White Rock Medical Center, LLC*
*Mirza Baig, Terry Fokas, and Rashid Syed)*

87.     Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

88.     Defendants Heights Healthcare of Texas, LLC, WRMC, LLC, NCP Management, LLC, National Payroll Services, LLC, White Rock Medical Center, LLC, Mirza Baig, Terry Fokas, and Rashid Dyed, breached their fiduciary duties to Plaintiff under Sections 1132(a)(1), 1132(a)(3), 1104, 1105 and 1109 of ERISA.

89.     As plan sponsors and plan administrators of the health and welfare benefit plans that provided Plaintiff an employee of White Rock Medical Center, the WRMC Defendants each had a fiduciary responsibility to an employee who is a beneficiary of that plan and that coverage, including (A) a duty to use the health insurance premiums deducted from an employee's paychecks to pay for health insurance coverage and not to divert those funds for other purposes or uses, and (B) a duty to accurately communicate material facts to beneficiary and not mislead beneficiary or misrepresent facts about the terms and administration of a plan.

90.     As CEO of White Rock Medical Center and a managing member of each of the WRMC Defendants, Mirza Baig had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to use the health insurance premiums deducted from employees' paychecks to pay for health insurance coverage and not to divert those funds for other purposes or uses.

91.     Specifically, Mirza Baig had control over making decisions about the health and welfare benefit plans that provided Plaintiff as an employee of White Rock Medical Center with his entitlement to health insurance coverage, including the decision  whether or not to pay premiums to Blue Cross Blue Shield of Texas.

92.     As Chief Restructuring Officer for Heights Healthcare of Texas, LLC, Terry Fokas also had decision-making authority and administrative control over the health and welfare benefit plans that provided Plaintiff an employee of White Rock Medical Center with his entitlement to health insurance coverage, including the decision whether or not to pay premiums to Blue Cross Blue Shield of Texas.

93.     Terry Fokas was therefore also a fiduciary who had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to use the health insurance premiums deducted from employees' paychecks to pay for health insurance coverage  and not to divert those funds for other purposes or uses.

94.     As Chief Operating Officer for Heights Healthcare of Texas, LLC, Rashid Syed also had decision-making authority and administrative control over the health and welfare benefit plans that provided Plaintiff Hansel and the other employees of White Rock Medical Center their entitlement to health insurance coverage, including the decision whether or not to pay premiums to Blue Cross Blue Shield of Texas.

95.     Rashid Syed was therefore also a fiduciary who had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to use the health insurance premiums deducted from employees' paychecks to pay for health insurance coverage  and not to divert those funds for other purposes or uses.

96.     Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Hansel and covered by White Rock Medical Center's health and welfare benefit plan by failing to remit health insurance premiums deducted from these employees paychecks to Blue Cross and Blue Shield of Texas, and instead diverting, misusing, and stealing those funds from employees.

97.     Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary duties to Plaintiff Hansel and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to remit the employer portion of premiums to Blue Cross and Blue Shield of Texas despite such payments being required by the health and welfare benefit plan.

98.     Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Plaintiff Hansel and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to remedy the situation and work out a deal with Blue Cross

Blue Shield of Texas to have the insurance coverage of Plaintiff Hansel and other laid off employees reinstated and their medical bills covered per the terms of the applicable plan and policy.

99.     Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Plaintiff Hansel and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to notify Plaintiff Hansel and other laid off employees that their premium payments were not remitted to Blue Cross Blue Shield of Texas, that their health insurance was retroactively canceled or why, or what if anything was being done to rectify the situation.

100.     Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary duty by failing to inform Plaintiff Hansel of material changes to the plan, and failing to be honest about how his health insurance premium payments were being used, whether or not the group health and welfare benefit plan continued to exist following the retroactive termination of the Blue Cross Blue Shield policies, whether his denied medical claims would be paid and when, whether there had been a transition to a new self-funded plan or the details of the terms and administration of claims under that new plan, what coverage or benefits (if any) he would actually receive if he elected COBRA and remitted COBRA premiums, and failing to timely provide a new summary plan description as required by 29 U.S.C. 1024(b)(1) despite material reductions in available coverage and despite knowing employees could not make informed decisions about whether to elect COBRA or purchase new insurance plans without clear information.

101.     As a result of Defendants' breach of their fiduciary duties to Plaintiff, Plaintiff has suffered actual harm including the loss of benefits to which he was otherwise entitled, the exposure to substantial medical bills that otherwise would have been covered, the inability to make decisions to delay medical care or find alternative coverage, the inability to make informed decisions about electing COBRA, and denials of service while medical bills remained outstanding with no information about whether or when those bills would get paid, all of which will cause significant financial and/or medical

harm to Plaintiff Hansel who is in need of additional chemotherapy and medical treatment and/or prescriptions for ongoing medical conditions.

102.    As a remedy for Defendants' breach of its fiduciary duties to Plaintiff, Plaintiff seeks all monetary, injunctive, and equitable relief to which he may be entitled, including an order to use plan assets and premiums paid by Hansel for purposes of the plan, an order to pay Blue Cross and Blue Shield of Texas all past premiums due to obtain a reinstatement of coverage for Hansel, restitution and payment of all medical bills that should have been paid under the terms and conditions of the applicable plan and policy or under COBRA had Hansel been able to make informed choices about whether there even was any COBRA coverage to elect and/or an order to extend COBRA elections for a reasonable period of time after clear information is provided as to what coverage (if any) the payment of COBRA premiums will actually buy Hansel, disgorgement of misused premium payments, and surcharge, restitution, and payment of all consequential damages.

**COUNT FOUR -  Violation of COBRA  (ERISA 29 U.S.C. §§ 1161, 1162, 1132(a)(1)**

*(Against Defendants Heights Healthcare of Texas, LLC, WRMC, LLC,*
*NCP Management, LLC, and National Payroll Services, LLC)*

103.    Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

104.    The WRMC Defendants has denied Plaintiff COBRA coverage to which he is entitled under Sections 1161, 1162, and 1132(a)(1) of ERISA.

105.    The WRMC Defendants separately or together as single or joint employers have 20 or more employees and are employers within the meaning of COBRA.

106.    Federal law required the WRMC Defendants to offer COBRA benefits (continued healthcare coverage) to Plaintiff impacted by the mass layoff.

107.    Federal law required the WRMC Defendants to report the qualifying event of Plaintiff's termination to Defendants' plan administrator, National Payroll Services, LLC, within 30 days of his termination.

108.    Federal law required the WRMC Defendants' plan administrator, National Payroll Services, LLC, to then provide Plaintiff notice of his eligibility to elect continued health insurance coverage under COBRA within 14 days of receiving the report.

109.    If the WRMC Defendants, including National Payroll Services, LLC as the plan administrator, had complied with these requirements, each of the 158 employees laid off on April 30, 2024 would have received a COBRA notice by June 13, 2024, including Hansel.

110.    Hansel, however, did not receive a COBRA notice until June 26, 2024.

111.    The WRMC Defendants and National Payroll Services, LLC as the plan administrator, are therefore liable to Plaintiff Hansel for $110 per day penalties under 29 U.S.C. § 1132(c), and for Plaintiff's reasonable attorney fees and costs.

## COUNT FIVE –Fraudulent Transfer of Assets

*(Against Heights Healthcare of Texas, LLC and White Rock Medical Center, LLC)*

112.    Hansel realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

113.    Hansel brings this claim pursuant to the Uniform Fraudulent Transfer Act (Tex. Bus. & Comm. Code § 24.001, *et seq.*) ("the Act"). Hansel is a creditor of Heights Healthcare of Texas, LLC within the meaning of the Act, and have a claim against Heights Healthcare of Texas, LLC for payment within the meaning of the Act. (Tex. Bus. & Comm. Code § 24.002(3)-(4)). Heights Healthcare of Texas, LLC is a debtor to Plaintiff within the meaning of the Act. (Tex. Bus. & Comm. Code § 24.002(6)).

114.     Defendants Baig, Syed, Fokas, and White Rock Medical Center, LLC (f/k/a Pipeline East Dallas, LLC) are "insiders" of Heights Healthcare of Texas, LLC within the meaning of the Act, in that at the time of the transaction in question, they were "persons in control" or "affiliates" of Heights Healthcare of Texas, LLC.

115.     Upon information and belief, Heights Healthcare of Texas, LLC is in the process of transferring some or all of its assets (including but not limited to the Heights Hospital in Houston, Texas) to insiders.

116.     Heights Healthcare of Texas, LLC recently furloughed a large number of its employees in Houston, Texas.

117.     Heights Healthcare of Texas, LLC cited, as the reason for the furlough, its need to transfer the ownership of Heights Hospital from HHT to WRMC, LLC.

118.     SRC also recently obtained a Temporary Injunction against HHT/WRMC, enjoining HHT/WRMC from engaging in various activities that would amount to fraudulent transfer.  This was needed due to WRMC's apparently ongoing attempt to avoid paying SRC. Specifically, HHT/WRMC was telling its own creditors to pay them via a separate bank account, so that SRC would not find out about their receipt of this income. As a result of this behavior, the Temporary Injunction gives access and control to SRC over HHT/WRMC's bank accounts.  This behavior indicates a knowing plan to hide and transfer assets from creditors.

119.     HHT's transfer of assets would be fraudulent as to Plaintiff.  Their claims arose before any transfers were made, and Heights Healthcare of Texas, LLC is making, or has made, the transfers with the actual intent to hinder, delay, or defraud Plaintiff.

120.     At the time of said transfers, Heights Healthcare of Texas, LLC believed that it was about to incur debts beyond its ability to pay (specifically, a judgment debt owed to Plaintiff).

121.     Furthermore, the transfer bears multiple "badges of fraud," as follows:

a.        the assets will be or were transferred to insiders;

b.        Heights Healthcare of Texas, LLC, through its insiders, has retained or will retain possession or control of the assets after the transfer;

c.        before the transfer was made, Heights Healthcare of Texas, LLC was threatened with suit by Plaintiff;

d.        Heights Healthcare of Texas, LLC will likely become insolvent shortly after the transfer is made; and the transfer occurred shortly before a substantial debt was to be incurred (specifically, a judgment in favor of Plaintiff).

122.    The plaintiff seeks all remedies to which he is entitled as a creditor under Tex. Bus. & Comm. Code § 24.008, including: (a) avoidance of the transfers as necessary to satisfy their claims; (b) an attachment or other provisional remedy against the transferred assets, and other property of the recipients of the assets; (c) an injunction against further disposition of the assets; (d) appointment of a receiver to take charge of the transferred assets, and of all other property of Heights Healthcare of Texas, LLC; and (e) any other relief to which he may be entitled. To the extent that the receiver is unable to take charge of any liquid assets to satisfy Plaintiff's claims, Plaintiff seeks a seizure of Heights Healthcare of Texas, LLC's non-liquid assets, to include its Business Personal Property located at 9440 Poppy Drive in Dallas, Texas (valued at approximately $5,845,960.00).

### COUNT 6: DISABILITY DISCRIMINATION (ADA)

***Against Defendants Heights Healthcare of Texas, LLC, WRMC, LLC, and White Rock Medical Center, LLC***

123.    Hansel realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

124.    The Americans with Disabilities Act (ADA), prohibits discrimination/retaliation "against a qualified individual with a disability because of the disability" in regard to any aspect of

---

the individual's application or employment. 42 USC §12112(a).   The prima facie elements of a claim for discrimination under the ADA are: (1) the plaintiff has a disability; (2) he was qualified for the job; and (3) he was subjected to an adverse employment decision on account of his disability. *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 700 (5th Cir. 2014). The prima facie elements of a claim for disability discrimination under Texas discrimination statute are: (1) the plaintiff has a disability; (2) the plaintiff is "qualified" for the job; and (3) the plaintiff suffered an adverse employment decision because of his disability. *Donaldson v. Tex. Dep't Aging & Disability Servs*., 495 S.W.3d 421, 436-37 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex. App.—Fort Worth 2006, pet. denied).  The ADA also protects people with disabilities who are "regarded as" being disabled.

125.    Here, it is undisputed that Hansel's diagnosis of end-stage multiple myeloma constitutes a disability.  Cancer is undisputedly a disability.  And it is undisputed that Defendants White Rock Medical Center, WRMC LLC, and Heights Healthcare of Texas LLC, knew of Hansel's condition and diagnosis.

126.    It is also undisputed that Hansel was qualified for the job.  Hansel excelled at his job, and he always has, as evidenced by the twelve years of performance reviews that indicate his stellar performance. Hansel was a loyal committed employee, who received an award recognizing him as "Employee of the Quarter" in 2021.

127.    It was only *after* Hansel notified Defendants White Rock Medical Center, WRMC LLC, and Heights Healthcare of Texas LLC, of his cancer diagnosis and treatment that he was terminated.  The truth of the matter is that Hansel was terminated because of his disability. The facts lay out a clear story.

128.    Defendants White Rock Medical Center, WRMC LLC, and Heights Healthcare of Texas LLC, and their wrongful acts have caused incredible damage to Hansel, and likely will lead to

the untimely death in addition to all other damages including compensatory, medical injury, including physical and mental injuries.

129.    Hansel seeking compensatory and punitive damages, along with reasonable attorneys' fees and costs.

### COUNT 7: FMLA RETALIATION
*Against Defendants Heights Healthcare of Texas, LLC, WRMC, LLC, and White Rock Medical Center, LLC*

130.    Hansel realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

131.    The FMLA gives eligible employees an entitlement to twelve workweeks per year of unpaid leave due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  The Company Employee Handbook acknowledges this law and practice.  While an employee is on FMLA leave it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.  29 U.S.C. § 2615(a)(1).  At the end of a period of FMLA leave, the employee has the right to be restored to the position, or its equivalent, that he or she held prior to taking leave.  *See* 29 U.S.C. § 2614(a)(1)(A). Likewise, it is unlawful to terminate an employee while exercising their right to protected FMLA leave.

132.    Hansel exercised a protected right under the Family and Medical Leave Act (FMLA).

133.    Hansel experienced an adverse employment action: he was terminated.

134.    There was a causal connection between the adverse action and Hansel's protected activity.

135.    Hansel was exercising his right to medical leave that as protected by the FMLA when he was terminated.

136.    Hansel was entitled to relief under the FMLA, given that the Company has retaliated

against him after he exercised his rights to take leave related to his own serious medical condition.

137.    Defendants White Rock Medical Center, WRMC LLC, and Heights Healthcare of Texas LLC, and their wrongful acts have caused incredible damage to Hansel, and likely will lead to the untimely death in addition to all other damages including compensatory, medical injury, including physical and mental injuries.

138.    Hansel seeking compensatory and punitive damages, along with reasonable attorneys' fees and costs.

139.    Hansel seeks all available damages and remedied, including back pay, front pay, liquidated damages, compensatory and punitive damages, along with reasonable attorneys' fees and costs.

### COUNT 8: FMLA INTERFERENCE

***Against Defendants Heights Healthcare of Texas, LLC, WRMC, LLC, and White Rock Medical Center, LLC***

140.    Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

141.    "To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which he was entitled under the FMLA." 29 U.S.C. § 2615(a)(1)).  To state a prima facie claim for interference under the FMLA, a plaintiff must allege the following: (1) that he is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that he was entitled to take leave under the FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied to which she was entitled under the FMLA."

142.    Not only did Defendants White Rock Medical Center, WRMC LLC, and Heights Healthcare of Texas LLC, interfere with Hansel taking FMLA, it also took actions that denied him

the basic medical care he needed to combat a serious, potentially terminal cancer diagnosis. Clearly a Texas jury would be outraged that a medical facility would discriminate, mistreat, terminate, and deny lawful medical treatment and healthcare to its long-term employee.

143. Hansel gave clear notice that he was taking and intended to take FMLA leave.

144. Hansel was entitled to take leave under the FMLA.

145. Hansel was denied his ability to take protected FMLA leave.

146. Hansel has suffered extreme and egregious damages and injuries as a result.

147. Hansel seeks all available damages including seeks back pay, front pay, liquidated damages, compensatory, punitive, and compensation for his medical and mental injuries, as well as reasonable attorneys' fees.

### III.    JURY DEMAND

148. In accordance with Federal Rule of Civil Procedure 38, Hansel demands a trial by jury of all issues raised in this civil action that are triable of right (or choice) by a jury.

WHEREFORE, Scott Hansel asks that this Court grant him judgment against Defendants for all appropriate monetary, equitable, and injunctive relief available to him under the WARN Act, ERISA, COBRA, ADA, and FMLA as applicable.

Dated: March 26, 2025                                  Respectfully submitted,

                                                       KJ PARTNERS, LLP


                                              By:      _____

                                                       Jessica Renee Brown
                                                       Texas State Bar No. 24048975
                                                       4849 Greenville Ave,  #100-170
                                                       Dallas, TX 75206
                                                       Jessica@KJPartners.law
                                                       Telephone:  469-586-6861

                                                       **ATTORNEY FOR PLAINTIFF
                                                       SCOTT HANSEL**